

# In the Court of Criminal Appeals of Texas

---

No. WR-95,190-01

---

EX PARTE MONIQUE YOLANDA DAVIS,

*Applicant*

---

On Application for Writ of Habeas Corpus
In Cause No. 1171765-A
In the 174th District Court
Harris County

---

YEARY, J., filed a dissenting opinion in which FINLEY, J., joined.

Gerald Goines, then a Houston Police Department narcotics officer, purportedly provided cash to a confidential informant who was said by him to have purchased hydrocodone from Applicant at her home. Based on an affidavit from Goines, which included these allegations, a magistrate issued a warrant to arrest Applicant and search her home

for illegal drugs. The warrant was executed the same day at Applicant's home, and she was found at that time, by Goines *and other officers*, to be in possession of cocaine and other suspected illegal drugs.[1]

Applicant was charged with possession of less than one gram of a controlled substance (cocaine), a state jail felony offense. *See* TEX. HEALTH & SAFETY CODE § 481.115(b) (establishing possession of less than one gram of a Penalty Group One controlled substance as a state jail felony). She pled guilty and, in June of 2008, the convicting court sentenced her to 180 days confinement in the county jail. *See* TEX. PENAL CODE § 12.44(a) (permitting state jail felonies to be punished as Class A misdemeanors in the interest of justice).[2]

In March of 2019, nearly eleven years after Applicant's plea, the Harris County District Attorney released a letter to Applicant. This letter disclosed that Goines had been relieved from duty and was under criminal investigation. According to Applicant's unsworn declaration, she was unaware of Goines's record of misconduct until she was contacted by the Harris County Public Defender's Officer in December of 2022.

Applicant subsequently filed an original application for a writ of habeas corpus in August of 2023. In a supplemental writ application, Applicant complains that: (1) she was denied due process when false

---

[1] In addition to cocaine, Goines's incident report states that law enforcement recovered "62 TABS OF SOMA / 120 TABS OF XANAX AND 27 UNKOWN TYPE TABLETS" from Applicant's home.

[2] Applicant long ago completed her sentence, but she has established collateral consequences "sufficient to establish 'confinement' so as to trigger application of art. 11.07." *Ex parte Harrington*, 310 S.W.3d 452, 457 (Tex. Crim. App. 2010).

evidence was used by the State to induce her guilty plea; and (2) her guilty plea was involuntary.

Today, the Court grants Applicant relief based on her second claim—involuntary plea—citing only *Ex parte Mathews*, 638 S.W.3d 685 (Tex. Crim. App. 2022), and *Ex parte Coty*, 418 S.W.3d 597 (Tex. Crim. App. 2014), as authority. Majority Opinion at 1. For the reasons explained below, I do not believe that Applicant is, at least yet, entitled to relief on either ground she alleges.

## I. BACKGROUND: *COTY*, *MATHEWS*, AND *BARNABY*

*Coty* established a rule for this Court's consideration of false evidence claims on habeas, that when an applicant in a drug case satisfies a five-part test focused on misconduct by a forensic analyst, the Court will presume that the testimony and/or evidence presented against the applicant by the analyst is false, subject of course to rebuttal. 418 S.W.3d at 605. Then, in *Matthews*, this Court explicitly extended the *Coty* presumption to "cases involving police officers who display a pattern of mendacity in obtaining drug arrests and convictions[.]" 638 S.W.3d at 690. So, when an applicant demonstrates that (1) a police officer who (2) "has committed multiple instances of intentional misconduct in another case or cases" (3) is the same state actor as in the current case, (4) has previously committed "the type of misconduct that would have affected the evidence in the applicant's case[,]" and (5) acted in the applicant's case "within roughly the same period of time as the other misconduct[,]" the Court will infer that evidence derived from that officer is false. *Id.* at 690–91. When the State fails to rebut that inference, the Court will go on to inquire whether the use of that

presumptively false evidence was material. *Id.* at 689; *Coty*, 418 S.W.3d at 605.

Still, the applicant bears the burden of establishing the materiality of the presumptively false evidence. *Mathews*, 638 S.W.3d at 691. To that end, in *Ex parte Barnaby*, the Court explained that when an applicant claims she has entered an involuntary plea based on the use of false evidence, a necessary question that arises is "whether there is a reasonable likelihood that [the false evidence] affected the defendant's decision to plead guilty[.]" 475 S.W.3d 316, 325 (Tex. Crim. App. 2015). In other words: "Would the defendant, knowing of the falsity of the evidence, still have plead guilty or would [s]he have insisted on going to trial? If [s]he would have chosen trial, the false evidence was material." *Id.* at 325–26.

## II. INVOLUNTARY PLEA

Applicant alleges that she "did not have sufficient awareness of the relevant circumstances surrounding the entry of her plea to make it knowing and voluntary." With respect to this ground, she argues: (1) that the information alleged in Goines's warrant affidavit should be presumed false under *Coty* and *Mathews* and; (2) that, because Goines was a member of the prosecution team, knowledge of his "practice of presenting false charges against numerous people" is imputed to the State, which had an "obligation to reveal such information to the defense." The State's failure to disclose that information to her, she alleges, rendered her plea involuntary. Though she does not say so, Applicant takes this notion of imputed knowledge from *Brady v. Maryland*, 373 U.S. 83 (1963).

However, as I recently wrote in *Ex parte Thomas*, before granting relief in this situation, the Court should decide whether *Brady* applies. *Ex parte Thomas*. 690 S.W.3d 682, 685 (Tex. Crim. App. 2024) ("To reach the conclusion that the State violated its disclosure obligations under *Brady*, the Court would have to decide (1) that *Brady* requires the State to disclose *exculpatory* evidence prior to a negotiated plea, and (2) that Goines's record of misconduct in other cases constituted *exculpatory* evidence in this case."). But the Court declines to undertake that inquiry. Instead, it merely states that "[t]he State and the trial court both recommend granting relief" on Applicant's claim of involuntary plea under *Coty* and *Mathews*, and that it agrees. If the Court means to endorse Applicant's *Brady* argument by its opinion today, then it should say so explicitly. If not, then it is incumbent on the Court to explain by what rationale it concludes, despite rejecting her *Brady* argument, that Applicant's plea was involuntary. Because the Court does neither, I cannot join its opinion.

### III. FALSE EVIDENCE

Applicant also alleges that if she "had known that Officer Goines [had] used false evidence to obtain a search warrant, she would not have pleaded guilty, but would instead have chosen the option of filing a motion to suppress evidence, or even opted for a jury trial." Ultimately, as I recently observed in *Ex parte Walker*, an applicant could possibly be entitled to relief on a ground like the one Applicant has presented to this Court. *See Ex parte Walker*, ___ S.W.3d ___, Nos. WR-95,387-01 & WR-95,387-02, 2024 WL 4610792, at *2 (Tex. Crim. App. Oct. 30, 2024) (Yeary, J., dissenting) (noting that the Court has yet to determine

whether the *Coty*/*Mathews* presumption should apply to false statements in a warrant affidavit). But to reach that conclusion would, in my view, require the Court, at least, to explicitly extend the reach of *Coty*, *Mathews*, and *Barnaby*. *See id.* ("Before granting Applicant relief, the Court should consider whether the *Coty*/*Mathews* inference of falsity and the *Barnaby* standard of materiality ought to apply in circumstances such as these—and if so, how."). Accordingly, I would file and set Applicant's case.

## IV. CONCLUSION

Applicant contends that she is entitled to postconviction habeas relief because, she alleges, (1) her due process rights were violated when the State used false evidence to induce her guilty plea, and (2) her plea of guilty was involuntary. I do not rule out that Applicant may ultimately be entitled to relief on either or both of the grounds she raises. But there are important predicate questions of law that the Court ought to address before deciding whether to grant Applicant relief on either of her claims. I would file and set Applicant's involuntary plea claim to determine whether, under *Brady*, the State was obligated to disclose Goines's history of misconduct prior to her plea, irrespective of the individual prosecutor's knowledge of that history. I would also file and set Applicant's false evidence claim to determine whether, and if so how, the *Coty*/*Mathews* test and *Barnaby* should apply to cases in which the applicant does not claim that the evidence of her guilt was false. Because the Court grants relief without first addressing both of these important threshold questions, as may be necessary, I respectfully dissent.

**FILED:**                                            February 5, 2025
**PUBLISH**